Opinion delivered April 28, 1886.

[No. 3892.]

### E. E. ROACH *v.* THE STATE.

1. PRACTICE—POSTPONEMENT—NEW TRIAL.—Motions to postpone or to continue the case for trial on account of surprise are motions addressed to the sound discretion of the trial court. Nevertheless, if the court improperly refused a postponement asked for on the ground of surprise by the evidence of a State's witness, and the motion for new trial develops that the absent testimony was material, the motion for new trial should prevail. See this case in illustration

2. SELF DEFENSE—IMPERFECT RIGHT OF SELF DEFENSE.—A defendant upon trial for murder cannot claim that the killing was in self defense, if, intending to kill the deceased, he entered upon the premises of the deceased and provoked the occasion which resulted in the homicide. If, however, he was a mere tresspasser upon the premises of the deceased,

and provoked the occasion which resulted in the homicide, without any intent to kill the deceased, or do him serious bodily injury, and without intent to commit any felony, he would not be deprived wholly of the right of self defense, but such right would be only partial and imperfect; and could operate no further than to reduce the homicide to manslaughter. If the defendant entered upon the premises with intent to kill the deceased, but abandoned such intention in good faith, and tried to escape from his adversary, then if he was pursued, his right of self defense revived. The abandonment and withdrawal, however, must be real and *bona fide*. See the opinion and the statement of the case for evidence *held* to demand of the trial court a charge upon these phases of the case.

Appeal from the District Court of Hunt. Tried below before the Hon. J. A. B. Putman.

The conviction in this case was for an assault with intent to murder one H. O. Poindexter, in Hunt county, Texas, on the fifteenth day of January, 1885. The penalty assessed against the appellant was a term of five years in the penitentiary.

H. O. Poindexter was the first witness for the State. He testified that on the fifteenth day of January, 1885, he was living at the house of Andrew Hefner, in whose employ he had been since late in the year 1884. Hefner lived on the old Slack place, about five miles north of Greenville, in Hunt county. From the sitting room in which Hefner's family were sitting, the witness, about nine o'clock on the night of February 15, 1885, started to bring a bucket of water. When he reached, and partially opened, the side door of the room, which was directly opposite the fire place, he saw a man standing on the edge of the gallery in front of the door. Witness did not recognize the man, but immediately closed the door, ran back into the house and got his pistol. Returning, the witness threw the door wide open, and by means of the light thrown from the sitting room, saw and recognized the defendant. Defendant turned and fled toward the gate. Witness followed into the yard. When the defendant reached a point fifteen or twenty steps from the gallery, he turned and opened fire on the witness. The witness then fired on the defendant, and advanced on him until both of them got some distance beyond the gate. When the defendant reached a point a short distance beyond the lot, he was joined by one or two other parties, who engaged in the fight. The defendant and his companions fired several shots. Witness fired four shots from his own pistol, retired, got Hefner's pistol, returned and fired two more shots. Hefner came out about the time the last shot was

fired by witness, and called to the parties that if they would come from cover they should have fair play. The parties then left. They had their horses hitched near the house. Eighteen empty cartridges were found on the field of battle next morning. One of the balls fired by the parties passed through witness's coat.

Cross-examined, the witness testified that he was shot by the defendant in a previous fight with him in September, 1884. Though the witness, when he first opened the door and saw the man on the gallery, failed to recognize the defendant, he felt confident that the man was the defendant, and that he had come to Hefner's house to kill witness. Witness and defendant were not on good terms. Defendant made no demonstration as if to shoot, when witness first went to the door. He made no effort to shoot when witness went outside with his pistol, but fled towards the gate. Witness did not see the pistol in the defendant's hand. When defendant turned and fired at witness, witness saw the blaze from the pistol. Witness was then stooping, endeavoring to get a sight of defendant. He had not then fired, nor did he fire until the defendant fired his first shot. Witness could not say exactly how many shots were fired during the engagement, but on the next morning eighteen empty cartridges were found on the ground of the fight.

A. C. Hefner testified, for the State, that he retired early on the night of February 15, 1885, leaving Poindexter and the members of his, witness's, family, sitting about the fire. About nine o'clock on that night, Poindexter started with a bucket to get some water. From the door of the sitting room, Poindexter ran back into the house, calling for his pistol. He secured his pistol and went out of the house, and within sufficient time for him to reach a point fifteen or twenty steps from the house the shooting began. Witness was unable to say who fired the first shot, or how many shots, in all, were fired. When he got out of the house, the witness saw the flashes of the pistols, which indicated that firing was done from two or three different directions. Poindexter was then shooting his pistol. The night was cold and dark, and witness was not able to recognize any of the parties shooting at Poindexter. Witness called to the parties that, if they would show themselves and fight fairly, they should have fair play. The parties opposed to Poindexter then mounted their horses and rode of. Eighteen empty cartridge shells were found the next morning on the ground.

Cross-examined, the witness said that he had lived several years in the neighborhood, and knew the defendant. He had no recollection of seeing the defendant in the neighborhood in January, 1885, or at any other time since the fall of 1884. Witness heard of the difficulty between defendant and Poindexter in September, 1884, since when he had never seen the defendant. Witness did not know that the defendant was one of the parties who were at his house on the night of the shooting.

Charles Matthews testified, for the State, in substance, that he lived within a few hundred yards of Hefner's house in January, 1885. On the night of the fifteenth day of that month, witness heard some parties,—two, he thought,—pass his house horseback, going towards Hefner's house. He did not see the parties, and, of course, had no idea who they were. A few minutes later, witness heard some fifteen or twenty shots fired at or near Hefner's house. Witness knew Poindexter, but did not know the defendant. If witness had ever seen defendant in that neighborhood, he did not remember it. The State closed.

W. R. Havens testified, for the defense, that he knew defendant during and prior to the year 1884. He heard of the difficulty between defendant and Poindexter in September, 1884, when the former shot the latter. Witness saw nothing of the defendant from September, 1884, until the summer of 1885, when he returned and surrendered. If defendant had been in Hunt county during the time between September, 1884, and the summer of 1885, witness thought he would have seen him. Defense closed.

M. L. Hale testified, for the State, in rebuttal, that he hunted defendant with a *capias* several months during 1885, but was unable to find him.

J. J. Hubbard testified for the State, in rebuttal, that it was his impression that he saw the defendant at Mrs. Dean's house, in Hunt county, in January, 1885.

The defendant's motion for new trial was supported by the affidavits of C. C. Christian, J. H. Maynard, and J. J. Terrett, to the effect that, to the knowledge of the affiants, the defendant was at and about the neighborhood of Oakes's ferry, in Lamar county, Texas, during and throughout the month of January, 1885. The motion otherwise raised the question discussed in the opinion.

*Montrose & Grubbs,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.    Appellant had insisted upon a trial.    After the state had closed her testimony, which was near noon and the hour for adjournment for dinner, defendant's counsel asked the court to adjourn so that they might have an opportunity to confer together as to the course to pursue, one of the counsel having just come into the case as the trial began, which request was refused by the court, and they then placed a witness on the stand, and occupied the time until the adjournment for dinner.    When the court reconvened they presented a motion to the court for a leave to withdraw the announcement of ready for trial, upon the ground of mistake and surprise.    It was claimed that, in announcing ready for trial, defendant and his counsel believed that the prosecution was on account of a difficulty between defendant and the same alleged injured party in September, 1884, in which difficulty defendant had shot his antagonist; that he had prepared to meet that charge, and had secured the attendance of his witnesses as to that matter, who would prove that, in said affair, he had acted alone in his necessary self defence; that he knew nothing about the transaction as testified to in this case by the State's witnesses, and, consequently, was not prepared to meet and refute the statements made by them, as he could and would do if time were allowed to secure his witnesses, who would establish for him a complete and satisfactory *alibi.*    The court refused to grant the motion.

It seems that the motion was not offered to secure a statutory postponement or continuance on the grounds of surprise.    (Code Crim. Proc., Art. 568.)    It is, perhaps, not inappropriate to treat it as a motion of that character.    On the motion for new trial, after conviction, the same grounds urged on this motion were again presented and relied on, supported, to some extent, by affidavits.

While it is true that the statutory motion for postponement or continuance, based on surprise, is confided to the sound discretion of the trial court, it is none the less well settled that, if the court improperly refuses the postponement occasioned by surprise at the testimony of a State's witness, and on motion for new trial it is developed that the absent testimony was material, the motion should prevail.    (Hood v. The State, 8 Texas Ct. App., 383; McDow v. The State, 10 Texas Ct. App., 98; Childs v. the State, Id., 183; Eldridge v. The State, 12 Texas Ct. App., 208.)

The showing made by defendant on his motion for a new trial was clearly a strong equitable one and, under the very peculiar circumstances of the case, we are of opinion it was error to refuse the new trial. It was a very dark night, and the alleged injured party failed to identify defendant in the first instance, and when close to him, and only claims to have identified him as defendant ran from him when he, the witness, emerged a second time from the house, after having secured his pistol. Defendant proposed to establish by his absent witnesses that, at the identical time thus testified to by the witness, he, defendant, was more than one hundred miles away in an adjoining county, where he was then residing.

There are one or more phases of self defence presented by the evidence, which the charge of the court wholly fails to notice. Evidently the theory of the prosecution was that defendant went to the house of Hefner at night, to waylay and murder Poindexter. When seen upon the porch or gallery by Poindexter, appellant made no attempt to do him violence. When Poindexter re-entered the house, got his pistol and came out, defendant ran. Poindexter pursued him some distance, when, he says, defendant turned and fired upon him.

If the defendant, intending to kill Poindexter, went to the house where he resided with a purpose to waylay and murder him, and thus provoked the occasion which resulted in his having to shoot at Poindexter, then he could not claim that his act was in self defense. If, however, he was a mere trespasser upon the premises, and thus provoked the occasion which resulted in his shooting at Poindexter without any intent, on defendant's part, to kill Poindexter or do him serious bodily injury, and without intent to commit any felony, in such case he would not be deprived wholly of the right of self defense, but such right would only be partial and imperfect, and such as would operate to reduce a homicide, had he committed a homicide, from murder to manslaughter, and when a homicide had not been committed, then his offense would be reduced from assault with intent to murder to aggravated assault. (Arto v. The State, 19 Texas Ct. App., 126; King v. The State, 13 Texas Ct. App., 277; Jones v. The State, 17 Texas Ct. App., 602.)

Again, the evidence shows that this appellant retreated at the second approach of Poindexter, and only shot after Poindexter had pursued him some distance. If defendant went upon the premises with intent to kill Poindexter, yet, if he abandoned

such intention in good faith, and tried to escape from or avoid his adversary, then, if he was pursued, his right of self defense revives. Of course, there must be a *real and bona fide* abandonment and withdrawal on his part; for, if there be not, then he will still continue to be regarded as the aggressor. (1 Whart. Crim. L., 8 ed. sec. 486.)

These phases of the case were not presented by the charge of the court. The judgment is reversed and the cause remanded.

*Reversed and remanded.*