### BILL BURKS v. THE STATE.

No. 1791. Decided February 1, 1899.

1. **Impeachment of Witness—Rebutting Evidence.**

Where the defendant, in order to impeach a State's witness, proved that he had been indicted for an assault to murder defendant, it was competent to permit the witness to state in rebuttal that he had been acquitted of said charge without regard to record evidence of the fact.

2. **Assault With Intent to Murder—Evidence.**

On a trial for assault with intent to murder, it was not error to refuse to permit defendant to prove that, after the assault, the assaulted party carried arms for the avowed purpose of shooting defendant.

3. **Same.**

On a trial for assault to murder, the general character of the assaulted party at a time subsequent to, and not at the time of the commission of the offense, as a dangerous and violent man, is not admissible.

4. **Witness—Refreshing Memory.**

Ordinarily a witness can not refresh his memory by writings made by some other person unless they are signed by him. But where a memorandum of the witness' testimony before the grand jury, as taken down by the county attorney but not signed by the witness, was shown to and read over by him, inasmuch as the witness' memory may have been thereby refreshed, such proceeding was only tantamount to asking him a leading question, and no harm to defendant is made to appear.

5. **Charge—Threats—Special Instructions.**

On a trial for assault with intent to murder, where the court's charge upon threats, in connection with self-defense, is sufficient, it is not error to refuse special requested instructions upon the same subject.

6. **Manslaughter—Insulting Language Concerning Female Relative.**

In order to reduce an assault with intent to murder to an aggravated assault, on account of insulting language concerning a female relative, the insult must have been acted upon at the first meeting of the parties after defendant had been informed of such insulting language; or, if the insulting language was uttered or repeated to defendant, he must have resented it immediately and not have waited some five or ten minutes before doing so.

7. **Charge—Self-Defense—Harmless Error.**

A charge which erroneously limits the right of self-defense is harmless error where the evidence does not raise the issue of self-defense.

**8.  Self-Defense—"Hip Pocket" Movement.**

It is not every movement of one's hands, even where a grudge exists between the parties and threats have been made, that will justify an assault.  Where defendant testified that he stationed himself outside of the door of the saloon for the purpose of shooting the prosecutor when he came out, whether he made any demonstration or not, but that he did make a movement of his hand towards the waistband of his pants—though he had no weapon upon him—and incontinently fled at defendant's first demonstration with his pistol, whereupon defendant pursued and continued to fire upon him, it would be a travesty upon justice to say that defendant could claim self-defense on account of such demonstrations made by the prosecutor.

**9.  Right of Self-Defense—Extent of Charge.**

Where the court in effect instructed the jury that if defendant had the right to fire the first shot he had the right to continue to shoot as long as it was reasonably apparent to him, viewed from his standpoint at the time, that his life and person were in danger from his adversary, it was not error to refuse a further instruction to the effect that if the prosecutor, who fled, had not abandoned the difficulty, but was seeking to get a weapon to renew it, defendant had a right to continue to fire upon him.

APPEAL from the District Court of Collin.   Tried below before Hon. J. E. DILLARD.

Appeal from a conviction for assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with making an assault, with malice aforethought, on O. Powell, on the 18th of October, 1897, and shooting at him with a pistol with intent to kill and murder him.

In brief, the evidence shows that Powell, the assaulted party, had worked for the defendant Burks on his farm, and claimed that Burks owed him for twenty-one days' work, which Burks denied, claiming that he had paid him all he owed him.   This dispute about the matter occasioned ill feelings between the parties, and Powell made serious threats against Burks, which had been communicated to him.   One Champion had sued Burks and attached the latter's cotton.   Johnson, a son-in-law of Burks, hauled the cotton to town for the officers.   Meeting with Powell, he, Powell, asked him about the cotton.   He asked Powell why he asked him, and Powell said, "Because Burks owed him."   Johnson told him he had heard he had been paid.   Powell replied, "Anyone who says I have been paid is a 'd—d lying son of a b—h."   Johnson says he replied Mrs. Burks said so; and Powell said, "I have nothing to take back."   Johnson informed Burks of what Powell had said.   Afterwards, it seems, the parties had met and talked with each other before the shooting.

Burks, the defendant, testified in his own behalf, as follows: "I know O. Powell.   I shot at him in McKinney, and shot to kill him.   I had a conversation with him in front of the saloon, about five minutes before the shooting, in which conversation he called me and all my family d—n l—g s—ns of b—ches.   I went up into Jim Gough's office and got my pistol and came back down stairs, and the shooting took place in a few minutes afterwards.   Powell came to the saloon door and made a demonstration by going towards the waistband of his pants with his right hand, and I shot at him.   Powell had come to the

saloon door three times and made demonstrations as if to draw a pistol or knife from the waistband of his pants before I went up stairs after my pistol."

Cross-examined: "I shot at Powell because he made the demonstration. That was my reason, and my only reason, for shooting at him. I thought he was going to take my life. I had looked through the back partition door of the barber shop, and watched Powell back in there. Before that, I had seen Powell and Houston and Champion go out the back door of the saloon. I sat down on the sill of the barber shop door with my pistol in my pocket. I was expecting Powell to come out of the saloon. I knew he was in there. I intended to shoot him when he came out. I intended to shoot him when he came out whether he made any demonstration or not. I did draw my pistol on Eph. Andrews, and thought it was Powell at the time. This was when Eph. Andrews came out of the saloon door, a few minutes before I shot at Powell. Eph. Andrews made no demonstration to hurt me when I drew the pistol on him. I could have gone away from the saloon if I had wanted to. When Powell said, at Witherspoon's, that if shotguns or pistols were pleased to be used, he would be on the range, I don't know whether he had reference to my drawing my gun on Champion or not. I don't know whether I understood it that way or not. I did draw my gun on Champion one day before the shooting at Powell. Champion was hauling some cotton, and I drew my shotgun on him at the gate and told him I would kill him if he went out. Champion was hauling four bales of cotton to my one."

The matters discussed in the opinion are sufficiently stated, and need no further illustration from the record.

*Abernathy & Beverly,* for appellant.

*Robt. A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of two years, and he appeals.

There was no error in permitting the witness Otto Powell to state that he had been acquitted of the charge against him for an assault with intent to murder Bill Burks. The defendant having proved, in order to impeach him, that he had been indicted on said charge, it was competent in rebuttal to show by this witness that he had been acquitted of said charge, without regard to record evidence of the fact.

Nor do we think there was error on the part of the court in refusing to permit defendant to prove by the witness Powell that, after the alleged assault on him by defendant, he carried arms for the avowed purpose of shooting defendant. This testimony was subsequent to the charge contained in the indictment, and was immaterial.

There was no error on the part of the court in refusing to permit

appellant to prove by witnesses the general character of Powell for being a dangerous and violent man at a time subsequent to the alleged offense. It appears that these witnesses did not propose to state what the character of Powell was at the time of the commission of the offense. In fact, in the view we take of this case on the facts, we can not see how the character of Powell as a peaceable or dangerous man was a material issue.

Ordinarily, a witness can refresh his memory by reference to writings or data made by himself, but not by writings made by some other person, unless such writing was signed by him. There may be exceptions to this rule. It appears that the witness Calhoun was furnished with a memorandum of his testimony before the grand jury when they were investigating this case. Said testimony appears to have been taken down by the county attorney, but was not signed by the witness. This writing was permitted to be read over by the witness, and he was then asked by the State if Burks was not talking at the barber shop on the morning of the day of the difficulty, and before it happened, about his rents, and that he "had it in for somebody." We are not apprised by the bill of exceptions whether or not the recollection of the witness was refreshed by reference to said writing. However that may be, the county attorney was authorized to make a memorandum of the witness' testimony delivered before the grand jury for use in drawing an indictment. This memorandum, though unsigned by the witness, may have served the purpose of refreshing his memory. Still, it is not stated that it did. At most, it could have been no more than asking the witness a leading question on the subject, and, under the circumstances, we can see no harm in this.

Appellant complains that the court refused to give the special instruction asked by him on the subject of threats by Powell, in connection with the charge on self-defense. We have examined the court's charge on this subject, and, in our opinion, it was amply sufficient.

He also complains that the court should have specially instructed on manslaughter with reference to insulting language to a female relative. Appellant's contention is that the charge on this particular subject was called for on account of the testimony indicating or suggesting such insult. The testimony shows that on the day before, in a conversation with one Johnson in regard to some cotton, Powell, the prosecuting witness, claimed that defendant owed him wages out of said cotton. Johnson said that he understood it had been paid. Powell said that whoever said it had been paid was a damn lying son of a bitch. Johnson responded that Mrs. Burks (wife of appellant) said that it was paid. Powell replied that he had nothing to take back. The evidence shows that this was communicated to appellant. But, after this, appellant and Powell met, and conversed with each other. This is conceded, but it is claimed that some five or ten minutes before the assault, in a conversation between appellant and Powell, this remark was repeated. It occurs to us that, in order to reduce the assault

to an aggravated assault on this ground, appellant should have acted on it at the first meeting, or when the remark was repeated to him. The court, however, gave a charge on manslaughter. This charge, after defining the essential elements of manslaughter, instructed the jury as follows: "That any condition or circumstance capable of creat- ing, and which does create, sudden passion, such as anger, rage, sudden resentment, or terror, rendering the mind for the time incapable of cool reflection, whether accompanied by bodily pain or not, may be adequate cause;" and that the jury could consider all the facts and circumstances in determining whether or not there was adequate cause. We think that the evidence cut off this special defense. Appellant and Powell having met since the utterance and communication of the first alleged insult, and the second alleged insult having been made to him in per- son, and he not then resenting it, whatever this testimony was worth as engendering passion could be considered by the jury under the gen- eral charge as to adequate cause.

Appellant objected to the following portion of the court's charge on self-defense, to wit: "Unless you further believe from the evidence, beyond a reasonable doubt, that defendant sought the meeting with said O. Powell, armed with a pistol, for the purpose of provoking a difficulty with said O. Powell, with the intent to take the life of said O. Powell, or do him such serious bodily injury as might probably end in the death of O. Powell; and, if you further believe this from the evidence beyond a reasonable doubt, then you are instructed, if defend- ant sought such meeting for such purpose and with such intent, the defendant would not be permitted to justify on the ground of self-de- fense, even though he should thereafter have been compelled to act in his own self-defense." It is strenuously insisted that this charge is erroneous, because it makes the mere seeking, with intent to take the life of said Powell, or do him serious bodily injury, cut off the right of self-defense, regardless of whether, when the parties met, appellant then did some overt act to provoke or bring on the difficulty for the purpose of killing. As a matter of law, we have no doubt of the cor- rectness of this contention. To illustrate: If A. seeks B. to bring on a difficulty for the purpose of killing him, and meets B., but does no act to provoke or bring on the difficulty, and B. attacks A., we do not understand that this mere intention on the part of A. would cut off his right of self-defense when attacked by B. If, however, when the parties A. and B. meet, B. attacks A., and A. fights voluntarily and willingly with B. on his original intention, and not merely in self-de- fense, then, under such circumstances, he might not have the right to rely on self-defense, but the proof in such case must show that he fought willingly and voluntarily. Concede that the charge given here was erroneous, still, if there was no self-defense in this case, then there was no error in giving a charge on self-defense, and then cutting it off by an erroneous charge. All the testimony for the State shows an unprovoked assault on the part of appellant on the prosecutor, Powell,

under circumstances manifesting an intent to kill him.  Powell, it seems, had been in the saloon where the difficulty occurred, for some time.   There was a grudge existing between him and defendant, and threats had been made by each against the other.   Appellant, knowing that Powell was in the saloon, armed himself, and waited for him at the door; and, when Powell appeared at the door of the saloon on his way out, appellant immediately drew his pistol, and began firing at him.   He chased him from the front to the rear of the saloon. Powell either jumped over the bar, or ran around the screen, and got behind it.   In the meantime, while he was chasing Powell, he fired three shots at him.   It is also shown in this connection that appellant had previously drawn his pistol on Eph Andrews, as he emerged from the saloon a short time before, mistaking him for Powell.   Appellant's own evidence does not relieve the case in anywise so as to make it a case of self-defense.   He admits that he took his stand at the door of the saloon for the purpose of shooting and killing Powell when he made his exit therefrom.   He says: "I intended to shoot him [Powell] when he came out.   I intended to shoot him when he came out, whether he made any demonstration or not."   He says, however, that, just as Powell got to the door, he made a demonstration by going towards the waistband of his pants with his right hand, and that he shot at him because of this demonstration.   It appears, however, that Powell had no pistol or weapon, but, on the first demonstration by appellant, he incontinently fled, appellant pursuing and firing on him.   It is not every movement of one's hands, even where a grudge exists between parties and threats have been made, that will justify an assault.   This is a misconception, and we have no doubt that from this misconception criminals have gone unwhipped of justice.   A man has hands, and he is expected to carry them in some way about his person; and the mere movement of one's hand to any part of his body, without more than this, should not authorize the taking of human life.   The "hip-pocket movement" was formerly much in vogue, but now it appears to be a movement to the waistband of the pants.   We are not prepared to say that under some circumstances such a movement might not be potential, and authorize immediate action, but the circumstances of this case do not so indicate; and to hold that appellant had a right to shoot here under the facts in evidence, even under his own testimony, would in our opinion be a travesty upon justice.   Certainly it can not be contended that appellant did not embark voluntarily and willingly in the fight; and, when he saw his adversary had fled and was making no contest, he still pursued him, firing at him for the purpose of killing him.   We accordingly hold that, while the court's charge was erroneous when it attempted to limit or cut off the right of self-defense, yet there was no self-defense in this case, and the error was harmless.

Appellant also complains of the court's charge on the conduct of appellant after Powell's abandonment of the difficulty; and appellant insists in this connection that the court should have given his requested

charge in the alternative, to wit: "If Powell did not abandon the difficulty, but was seeking to get a pistol or knife to renew it, then appellant would have the right to continue the difficulty." The court did instruct the jury that, if appellant had the right to fire the first shot at O. Powell, then he had the right to continue to shoot at him as long as it was reasonably apparent to him, viewed from his standpoint at the time, that his life or person was in danger from said O. Powell. We think this charge was amply sufficient on this subject; but, as stated before, there was no self-defense in this case. There being no reversible error in the record, the judgment is accordingly affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.