ALBERTA McDANIEL v. THE STATE.

No. 6443. Decided December 21, 1921.

Rehearing denied January 25, 1922.

**1.—Murder—Statement of Facts—Bill of Exceptions—Practice on Appeal.**

Where the bill of exceptions with reference to the question of evidence that defendant was under arrest, etc., and that his statement was not admissible, was in the form of question and answer, the same cannot be considered on appeal, and while it may sometimes be necessary for the trial judge to direct the incorporation of questions and answers for the aid of this court, yet, in the first instance, they should not be presented in this form. Following Jetty v. State, 90 Texas Crim. Rep., 346; recently decided, and other cases.

**2.—Same—Corpus Delicti—Sufficiency of the Evidence.**

Where, upon appeal from a conviction of murder, appellant contended that the *corpus delicti* was not sufficiently proved, but the record showed that the son of deceased testified that the deceased told him appellant shot her; that the shooting was admitted by the defendant, etc., etc., the *corpus delicti* was sufficiently proven.

**3.—Same—Self-Defense—Charge of Court—Requested Charge.**

Where, upon trial of murder, the evidence did not raise the issue of self-defense, there was no error in the court's failure to charge thereon, or, to refuse the requested charge on this phase of the case.

**4.—Same—Abandonment of Difficulty—Charge of Court—Self-Defense.**

Where, upon trial of murder, the evidence did not raise the issue of self-defense, it was not required by the court to charge on the abandonment of the difficulty.

**5.—Same—Manslaughter—Adequate Cause—Charge of Court.**

Where, upon trial of murder, complaint was made that the court's charge on manslaughter did not submit to the jury the question of adequate cause, as to defendant's knowledge of assault previously made on him and other persons, but the record showed that the court did instruct the jury that if they found from the evidence that previous to the shooting the deceased had made an assault or assaults on the defendant they would take that with all the other facts in determining the facts of adequate cause. Same was sufficient; besides, provocations arising by the acts of others or third parties are not required in the charge.

**6.—Same—Charge of Court—Cooling Time—Manslaughter.**

Where, in connection with the charge on manslaughter, the court also instructed the jury that if any prior assault upon the defendant by the deceased occurred a sufficient length of time before the killing for the mind of a person of ordinary temper to become capable of cool reflection such assault alone would not constitute adequate cause, there was no error under the facts of the instant case. Following Mackey v. State, 13 Texas Crim. App., 363, and other cases.

**7.—Same—Right to Carry Arms—Requested Charge—Self-Defense.**

If the court had charged on self-defense, and limited it in any way, the requested charge upon defendant's right to arm herself would have become

pertinent, but the facts not justifying a charge on self-defense, and the court not submitting such charge, there was no error in refusing a requested charge on that issue.

**8.—Same—Evidence—Bill of Exceptions—Practice in Trial Court.**

Where the sheriff was on the witness stand, having been called by the defendant and the district attorney asked him, on cross-examination. "You say you haven't been interested in defendant's defense," to which he replied in the negative, and was then asked "Didn't you state this week that you would have to stay with her because you didn't want the job of hanging her," to which he also replied in the negative, and to which the court sustained defendant's objection, there was no reversible error; besides, the bill of exceptions did not point out what testimony had been given by the witness on direct examination.

**9.—Same—Evidence—Harmless Error—Maltreatment.**

While the evidence did not raise the issue of improper treatment after deceased was shot, there was no harmful error in the admission of testimony that the sanitarium in which deceased was treated was one of the best in the country.

**10.—Same—Rehearing—Requested Charge—Article 743, C. C. P.**

Where appellant in his motion for rehearing again insisted that the lower court committed reversible error in refusing to charge on self-defense, but there was no showing that such failure appeared to have had a harmful effect upon defendant, there was no error under Article 743, C. C. P., which among other things provides that an omission or commission in the charge of the court which is not calculated to injure the rights of defendant is not cause for reversal.

**11.—Same—Self-Defense—Insufficiency of the Evidence—Charge of Court.**

Self-defense is a defensive and not an offensive act, and where the issue is so slightly raised as not to justify a verdict based thereon. it need not be submitted to the jury, and this is also the case where the evidence is of such nature as to preclude reasonable belief that the accused acted in self-defense, and where the facts in the instant case showed that the defendant was the agressor, etc., the issue of self-defense was not raised, and there was no error in the court's failure to charge thereon.

**12.—Same—Cooling Time—Charge of Court.**

Upon motion for rehearing, this court can see no reason to conclude that it was in error in sustaining the charge of the court below on cooling time.

**13.—Same—Evidence—Practice in Trial Court.**

This court would not be inclined to hold that reversible error was committed by the asking of a question by the State, to which the objection of the accused was sustained, unless some injury was involved.

Appeal from the District Court of Cass. Tried below before the Honorable R. T. Wilkinson.

Appeal from a conviction of murder: penalty, twenty-three years imprisonment in the penitentiary.

The opinion states the case.

*Lincoln & Smitha,* for the appellant.—On question of *corpus delicti*: Lovelady v. State, 14 Texas Crim. App., 545; Gay v. State, 40 Texas Crim. Rep., 242; Southern v. State, 122 S. W. Rep., 259.

On question of self-defense: Kinklin v. State, 164 S. W. Rep., 1016;
Payton v. State, 132 id., 127; Williams v. State, 148 id., 763; Pratt
v. State, 50 Texas Crim. Rep., 230; Wells v. State, 63 id., 618;
Cheatham v. State, 57 Texas Crim. Rep., 442; Best v. State, 135 S. W.
Rep., 581.

*R. G. Storey,* Assistant Attorney General, for the State.—On ques-
tion of cooling time: Murray v. State, 35 id., 990.

HAWKINS, Judge.—Conviction is for murder. Punishment twen-
ty-three years in the penitentiary.

F. W. Albright, the sheriff, testified to a statement made to him
by appellant. An attempt is made by bill·of exception No. 2 to raise
the question that she was under arrest at the time and therefore the
statement was not introducible against her. The bill covers seven
pages of the transcript, five pages being in question and answer form,
and purporting to be the preliminary examination of the witness from
which it is to be ascertained whether accused was in fact under arrest
when the statement was made. We have repeatedly held that bills
in questions and answers were not in compliance with Article 744, C.
C. P., and Art. 2059, R. S. Article 744 refers to the civil statutes, and
Art. 2059, R. S. reads:

"No particular form of words shall be required in a bill of excep-
tions; but the objection to the ruling or action of the court shall be
stated with such circumstances, or so much of the evidence as may be
necessary to explain it, and no more, and the whole as briefly as pos-
sible." Vernon's C. C. P., page 537, note 21, No. 6407, Jetty v. State
90 Texas Crim. Rep., 346, (opinion November 30, 1921); No. 6447;
Parker v. State, (opinion December 7, 1921); Hornsby v. State, and
Johnson v. State (both opinions December 14, 1921).

In the Jetty case, supra, this language was used: "It may some-
times be necessary for the trial judge to direct the incorporation of
questions and answers for the aid of this court, but in the first instance
they should not be presented in this form." Bills of exceptions Nos.
6, 14 and 15 are in the same condition as bill No. 2, and these bills
for the reasons stated will not be considered.

We are unable to agree with the contention that the *corpus delicti*
is not sufficiently proven. Deceased's son testified that his mother
told him appellant shot her. The shooting is admitted by appellant.
Deceased's entire lower jaw was shot away. Her husband testified
that she was dead. The local doctors said they·looked upon the
wound as fatal; that while they could not say it was necessarily fatal,
that three out of four so wounded die. Deceased was suffering with no
illness at the time she was shot. She died nine days later. No issue
of neglect or improper treatment was submitted to the jury, and no
complaint made of its omission.

The trial court did not submit the issue of self-defense, to which exception was reserved (Bill No. 7) and appellant presented a special charge on that subject (Bill No. 12) which the court refused. This necessarily brings in review the evidence to determine whether the issue was raised. Bill No. 8 is an exception to the charge because it "did not submit to the jury the issue of communicated threats and previous difficulties, along with the issue of self-defense." An examination of the objections to the court's charge filed during the trial makes no mention of "communicated threats" or "previous difficulties" as relating to self-defense, and this bill can only be considered incidentally in connection with Nos. 7 and 12.

Appellant and deceased were negro women, both married, and lived within about one hundred yards of each other. Deceased, whether with reason or not, suspected her husband was paying some attention to appellant, and on various occasions attempted to make an assault upon appellant, and used abusive language towards her in regard to the matter. She had had trouble with various other women in the community about the same matter. It seems from the evidence that by some neighbors she was regarded as a little unbalanced on this subject. On the 24th of December, the day of the shooting, appellant passed by the home of the deceased late in the afternoon; and the only witness, outside of appellant as to what occurred on that occasion, is John Allen, a boy about thirteen years of age, and a son of the deceased. His testimony was, substantially; that appellant came by their house in a buggy, going towards her home, that his mother was out at the wood pile, and threw one stick of wood at Alberta, hitting the back of the buggy. He denies that his mother ever hit Alberta, and denies that his mother said to appellant: "That's all right, I will go in here and get my gun and I will fix you." He also denies that he heard his mother tell appellant: "I have been threatening to kill you for a long time, and now I am going to do it." In a few minutes after appellant went on towards her house she came back, bringing a shotgun with her, went to the side of the house and shot in the window. This witness only heard one shot, having run away from the house after the first shot was fired. He denied that his mother was on the porch at the time appellant came back, but claims she was inside the house. To determine whether the issue of self-defense was raised it will be necessary to look to the testimony of the appellant herself, and the statements that were introduced against her. The sheriff testified that, appellant told him prior to her arrest that about four-thirty on the afternoon of the killing she came back by deceased's house, and that deceased grabbed her horse by the bridle reins and hit her with a piece of pine; that she, appellant, then went on home, hitched her horse and went in the house and got her shotgun and three shells. She said that she went back to Malissa's house, halloed for her to come out of there, and told her if she did not come out she would shoot her out; that she did not come out, and that she, appellant, went to

the south room and shot the window pane out there, and heard deceased as she went to the north room; that she, appellant, then went around to the north room and shot a window pane out there, and still deceased did not come out; that she, appellant, stepped up on the gallery and kicked the middle door open, and that Melissa was in that room, that she saw Melissa turn around, and when she did that appellant shot her; that she also said: "If I had known I had not killed her I would have finished her before I left there." Appellant testified, reciting the various troubles that had occurred between herself and deceased about deceased's husband; about threats that had been communicated to her from deceased; about deceased's attempts to assault her with a gun, and with a stick on various occasions, and abusing and cursing her. With reference to the incidents immediately attending the killing, and a short time prior thereto, she testified as follows: (We put the language in the first person as being more convenient, not intending it to be a literal copy from the statement of facts.)

"As I was going by Malissa's house she was standing in the house peeping out of the window; she walked out into the yard to the wood pile; as I came by she grabbed my horse by the bridle and threatened to kill me; she hit me with some stove wood and run me around the buggy; she turned around to go in the house and said: "You just wait until I go into the house, I will kill you, I am going to kill you before the sun goes down this evening." I went home, about one hundred yards, got my gun and came back to deceased's house. As I was going back to her house I was expecting her to kill me that evening; I just felt like that would happen, and I just went right on down there. She was standing out at the door, just on the porch, and just before I walked up she stepped back in the house and closed the door, and said: "Just come on, I am ready for you." When I got there I went on around the corner of the house, and as I was going around I saw her inside a window, and I shot; and after I shot I went around the house to the other corner; and as I came around I saw her again, and I shot; after I shot that time I was going back to go home out of the gate, and I heard a noise just before I walked out, and I looked back and the door was eeking in and I walked in the door, and I saw her as I walked in; she moved just as I walked in, and she was standing behind the facing of the other door, and just as I glimpsed her, I shot. Yes, at the time that I made that first shot into the window I saw her inside there; the reason I shot that time was that I was expecting her to shoot me, I was looking for her to do it, and when I saw her I shot; the next time that I shot in the other window I saw her there; I shot in that window because I felt like she was trying to get a way to shoot me, because I knew she had a gun in the house; at the time that I shot I thought she was trying to get in position to shoot me. I would not have shot in there, and would not have gone back down there if I hadn't thought that my life was in

danger—I knew my life was in danger. As to the condition of my mind after she made this attack on me: I don't know how I did feel; I was scared. I wasn't cool, I was excited. I felt like my life was in danger because she was so liable to come to my house and jump on me; I couldn't tell when she would come and shoot me dead. She had been raising these rackets and jumping on me for four years, and making these threats against me. I would not have shot if I had not believed that she was going to kill me."

On cross-examination appellant testified:

"When I got around the corner of the house I saw Malissa; she moved when I shot. I shot because I thought maybe she was trying to get to shoot me; then I went around to the other end of the house, I saw her and I shot through the window again. I started to go home out of the gate, and I heard a noise just before I walked out, and I looked back and the door was open, and I saw her behind the facing of the other door and I shot. I shot three times, twice I shot in the window and once I shot through the open door. Malissa was standing behind the door facing, a door of another room, I had already gotten into the front door just a little piece. I went in the house to shoot her and I shot her."

The State introduced the following statements made by appellant while before the grand jury:

"My name is Alberta McDaniel; I am about thirty years old; I knew Malissa Allen for four years; I knew her on or about the 24th day of December, 1919. On that day I went to Linden, Texas, and on my way back home I had to go by Malissa Allen's home, and when I got in front of her home she met me in the road. I was traveling in a buggy. Malissa Allen stopped my horse and began cursing me, calling me a s-n-of-a-b—h and a whore. I run around the horse and buggy to keep her from getting her hands on me; she was throwing sticks of stove wood at me, and hit me with them twice; she then told me to wait until she went in the house and she would kill me. I got in the buggy and drove home as fast as I could, which was a little over 100 yards. I went in my house and got a single barrel breech loading shotgun and three shells and went back to Malissa Allen's home. I went to a window and shot into the house twice to scare her out, but she did not come out, and then I pushed the door open and saw her standing behind the facing of a door in another room. I then shot her. My husband then called me and told me to come out of there. He asked me if she jumped on me when I came by there, and I told him yes, and I was tired of her bothering me for nothing. All I remember Malissa saying after I went to her house with the gun was when I opened the door, she said for me not to come in there, if she could get her hands on me she would kill me."

We have been unable to reach the conclusion that the evidence raises the issue of self-defense whe nconsidered in its most favorable light. Appellant says she knew deceased had a gun in the house, and thought

90 T. C.—41

she was going to try to try to kill him. At no time does she claim to have seen deceased with a gun or trying to get one. She testified to no act on the part of deceased from which she could reasonably believe that deceased was then attempting to hurt her. If she feared that deceased might sometime later come to her house and attempt to do her violence it would offer no legal justification to forestall it, and herself seek her adversary. Appellant testifies to no act indicating a present purpose on deceased's part to execute any previous threat.

Timely objection was made because the court failed to charge on abandonment of the difficulty by appellant, and is preserved in bill of exceptions No. 9. A charge on this subject is not required unless necessary to properly advise the jury of accused's rights on the issue of self-defense. As was said in Roach v. State, 21 Texas Crim. App., 25, 17 S. W. Rep., 464.

"If defendant went upon the premises of another with intent to kill him, yet if he abandoned such intention in good faith, and tried to escape from or avoid his adversary and was pursued, his right of self-defense revives."

The evidence not raising the issue of self-defense there was no basis for a charge on abandonment of the difficulty. The evidence does not raise that issue. It rather suggests that as accused started to leave, she discovered that up to that point there had been a failure to accomplish the death of deceased and she returned to further prosecute her purpose to kill.

Complaint is made because the court in the charge on manslaughter did not submit to the jury the "question of an adequate cause raised by defendant's knowledge of the character of deceased, and of assaults previously made on defendant and other persons." We quote from the court's charge on the subject of manslaughter and "adequate cause" the following:

"In this connection you are further instructed that in determining the question of immediate influence of sudden passion and adequate cause, you may take into consideration any previous difficulties, provocations, threats or any assault made by the deceased upon the defendant, and if you find from the evidence that previous to the shooting the deceased had made an assault or assaults on the defendant, you may take such fact together with all other facts in determining the condition and state of the defendant's mind at the time of the shooting."

In view of the portion of the charge quoted we think appellant's complaint is without merit. On the question of "adequate cause" previous provocations offered to accused are pertinent, but not generally those offered to others; but in so far as the court's language "together with all other facts" embraced it, the jury were left at liberty even to consider assaults by deceased on other persons.

In connection with the charge on manslaughter the court also gave the following instruction:

"And where there are several causes to arouse passion, although no one of them alone might constitute adequate cause, it is for you to determine whether or not all such causes combined might be sufficient to do so. An assault and battery by the deceased upon the defendant producing pain or blood-shed is deemed in law to be adequate cause; but, if such assault and battery was committed upon the defendant by deceased prior to the difficulty and occurred a sufficient length of time before the killing for the mind of a person of ordinary temper to become capable of cool reflection, such assault alone would not constitute adequate cause."

Objection was urged to the latter part of the charge (Bill of exceptions No. 11); first, because the issue was not raised by the evidence; second, because the same was a charge on the weight of the evidence; third, because the assault by deceased on appellant, and the shooting, was a continuous transaction. The evidence already reviewed will sufficiently show we think that the issue was raised, and that the shooting of deceased, and the assault by her on appellant was not a continuous transaction. "If 'cooling time' is an issue, the jury and not the court is entitled to decide whether defendant's mind had time to cool." (Branch's Crim. Law, Sec. 506; Mackey v. State, 13 Texas Crim. App., 363; Ross v. State, 53 Texas Crim. Rep., 279. This issue was left for the jury to determine, and was not so framed as to be on the weight of the evidence.

Appellant requested the court to charge upon her right to arm herself and go upon the premises of deceased to seek the latter's husband for the purpose of getting him to protest with deceased against further assaults on appellant. (Bill No. 13.) If the court had charged on self-defense, and limited it in any way, the requested charge would have become pertinent. If the court was right in refusing to submit self-defense, then there was no occasion to give the special charge, and the question reverts to one already considered.

It appears from Bill No. 16 that while V. A. Wallace, the sheriff, was on the witness stand, having been called by accused, the district attorney asked him on cross-examination: "You say you haven't been interested in her defense?" to which he replied, "No, sir." He was then asked, "Didn't you state this week you would have to stay with her because you didn't want the job of hanging her?" to which he replied, "No, sir." Appellant objected to the last question, which was sustained, and the court immediately instructed the jury not to consider the question. The entire bill consists of the two questions and answers. It nowhere appears in the bill what testimony had been given by the witness on direct examination. The State had a right to investigate his interest or bias, and while the question as it stands was improper, yet on account of the incompleteness of the bill, we are not prepared to say but that the prompt action of the trial judge relieved it of the hurt, if any.

We see no error in permitting Dr. Taylor to testify that the wound inflicted on deceased was a "serious" wound. Appellant urges that the question was not whether it was "slight or serious," but whether "fatal." (Bill No. 17.) We do not regard the matter of sufficient importance to discuss it further.

After deceased had been wounded by appellant, and treated by Dr. Taylor, the local physician, he recommended that she be taken to Texarkana, to the "Pine Street Sanitarium" and placed under the treatment of Dr. Kitrell. While upon the witness stand Dr. Taylor testified over objection (Bills Nos. 18 and 19), that the sanitarium in question was one of the best in that part of the country, and used by his patients; and that Dr. Kitrell's standing as a physician and surgeon was good; that he was recognized as one of the best. If neglect or improper treatment had been an issue, and no testimony in evidence as to the care or treatment received by the patient after going to the sanitarium a different question would be before us. While the examination of the witnesses would indicate a purpose on the part of appellant's counsel to raise such an issue, yet the same was not submitted by the court; no objections were made because of the omission; and no special charge on the subject requested. In this condition of the record we do not consider the evidence complained of as seriously harmful, if so at all.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

January 25, 1922.

LATTIMORE, JUDGE.—It is so earnestly insisted that we were wrong in upholding the action of the lower court in refusing to charge on self-defense herein, that we have again carefully reviewed the entire facts, but are thereby more strongly convinced of the correctness of our former opinion in this record. This court is commanded by Article 743, Vernon's C. C. P., to affirm judgments when the errors complained of relate to disregard of any one of the nine preceding articles concerning charges, unless it appears from the record that such omission or commission was calculated to injure the rights of the accused. One of the nine preceding articles referred to commands the trial court to give to the jury the law applicable to the issues made by the facts. To be tenable, appellant's complaint of the failure to give such charge must be that this in reason appears to have had a harmful effect upon her effort to secure an acquittal in her case.

The unchallenged facts show that while appellant was passing the home of deceased a short time before the alleged homicide an altercation took place, after which appellant drove on to her home, se-

cured a breech-loading shotgun and three shells, and came back to the home of deceased where the homicide took place. Three statements regarding what there occurred were made by appellant; one to the sheriff of the county the next morning, one to the grand jury investigating her case, and one while a witness on her trial. No eyewitness save appellant testified in her behalf, or to any fact remotely tending to raise any issue of self-defense. Her statement made to the sheriff is substantially set forth in our opinion, but a few illuminating details were omitted. The sheriff went to her house for the purpose of arresting her husband upon information, which led to the officer's belief that her husband had done the shooting. Appellant at once informed him that she had done so and told him that after her little row with deceased that she had gone home and gotten her shotgun and shells with the intention of using them to kill deceased with. The language used by her was pointed and forceful. She said she went back to Melissa's house and hollered for her to come out or she would shoot her out; that getting no response she went around the house and shot through a window into the house; that she heard deceased go from the room into which she shot, to another room; that she then fired into the room to which deceased had gone; that deceased still not coming out, she went to the door and kicked it open and shot deceased, and that if she had known that shot had not killed her she would have finished her before she left. It is perfectly evident that there is nothing in this narration which in any way suggests any self-defense. Appellant's statement before the grand jury was also in evidence and is set out fully in our opinion. There is no substantial difference except that appellant testified there to some statements made by deceased which we do not think materially change the attitude of the parties. Appellant's testimony when on the witness stand is also set out in the opinion, and without much change she again affirms the facts substantially as outlined in her original statement to the sheriff. True, in her testimony she says that she went down to the home of deceased because she thought herself to be in danger, and that she was scared, and that she shot deceased because she thought the latter was going to shoot her. What weight could any court or jury give to verbal claims so overwhelmingly denied and refuted by admitted acts and deeds of the claimant? "We canna hear the words ye say for thinkin' o' the deeds ye do," were the apt words of a canny Scot. It is as though A—on trial for killing B—should swear that he shot in self-defense, and on being asked what B was doing at the time he was shot, he should answer, that he was asleep; or as if C—charged with killing D—should swear that he took his gun and went to D's house, and called him to the door, and upon seeing him D fled and C shot, and testified that he shot in self-defense, no error would be committed in either case in refusing to submit self-defense.

Self-defense is a defensive and not an offensive act, and where the issue is only slightly raised as not to justify a verdict based thereon,

it need not be submitted to the jury. Burton v. State, 67 Texas Crim. Rep., 149, 148 S. W. Rep., 805. Nor where the evidence is of such nature as to preclude reasonable belief that the accused acted in self-defense. Childs v. State; 22 S. W. Rep., 1039; Nairn v. State, 45 S. W. Rep., 703; Godwin v. State, 39 Texas Crim. Rep., 404; Burks v. State, 40 Texas Crim. Rep., 167; Monroe v. State, 47 Texas Crim. Rep., 59; Lentz v. State, 48 Texas Crim. Rep., 580. Appellant's own testimony placed deceased on the latter's porch as appellant came up with the gun. Deceased retreated into her house,—appellant goes around it, shoots into a window, hears deceased go to another room, shoots into said other room, hears nothing further and goes to the gate, sees a door opening a little way, goes back to said door, opens it, sees a movement, and shoots and kills deceased. This is the condensed narration of the movements of appellant, not one of which is an act of defense but each of which is an act of offense. Her original statement to the sheriff, when the facts were fresh in her mind and before she was confronted with a court trial, is so in consonance with her movements as detailed and so entirely contradictory of any thought, element or suggestion of self-defense, as to bring this case entirely within the rule announced in the cases above cited.

We see no reason to conclude our opinion in error in sustaining the charge of the court on cooling time.

We would not be inclined to hold that reversible error was committed by the asking of a question by the State, to which the objection of the accused was sustained; unless such question involved a much graver possibility of injury to the accused than appears in the question complained of in bill of exceptions No. 6, appellant's objection to which was sustained.

Believing the case correctly decided, the appellant's motion for rehearing will be overruled.

*Overruled.*