# OCTOBER 1922.

### WILEY SMITH v. THE STATE.

No. 6685.    Decided May 10, 1922.

Rehearing Denied June 23, 1922.

1.—Robbery—Continuance—Attorney and Client—Want of Diligence.

Where an attorney of appellant's own choice is entrusted with the duty of securing process and is lacking in diligence, the laches of the attorney

in this regard are chargeable to the client. Following Goodman v. State, 4 Texas Crim. App., 349.

**2.—Same—Bills of Exception—Question and Answer.**

Where the bills of exception consist of question and answer form, same cannot be considered on appeal. Following Jetty v. State, 90 Texas Crim. Rep., and other cases.

**3.—Same—Sufficiency of the Evidence.**

Where upon trial of robbery, the evidence supports the conviction, there was no reversible error.

**4.—Same—Rehearing—Continuance—Practice on Appeal.**

Where the trial court was amply justified in concluding that haa said witnesses been present their testimony would not have been, as stated in the application for continuance, and if they had given testimony as set out in said application it could not likely be true or bring about a different result, there was no reversible error.

**5.—Same—Sufficiency of the Evidence—Gambler—Identity.**

The fact that the alleged victim of the robbery was a gambler and admitted said fact, would not operate to prevent the jury's belief in the truth of his testimony; and the identification of defendant being sufficient, there is no reversible error.

Appeal from the District Court of Wichita.    Tried below before the Honorable H. F. Weldon.

Appeal from a conviction of robbery by firearms; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*John M. Martin, Aynesworth, Williams & Watkins,* and *Taylor & Taylor,* for appellant.—Cited Barton v. State, 49 Texas Crim. Rep., 121; Bookser v. State, 26 Texas Crim. App., 593. Felder v. State, 23 id., 477; Chapman v. State, 45 Texas Crim. Rep., 479.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for robbery by the use of firearms. Punishment fifteen years in the penitentiary.

Application for continuance was presented based on the absence of two witnesses. Indictment was returned June 27th, 1921. The case was called for trial July 25th, 1921. No process had been issued for the absent witnesses. Appellant undertakes to excuse the apparent lack of diligence by stating that he had been confined in jail for thirty days; that he had employed an attorney, and a few

days after his incarceration had given said attorney the names and addresses of the witnesses; that his said attorney informed him that he would have process issued for them, and that the "first he knew that his witnesses were not *present*" was on July 25th, when the case was called, and that his attorney and witnesses were both absent. It will be observed that the application does not show when he employed the attorneys who did represent him on the trial, ·nor when it was first discovered that no process had been issued for the witnesses. Where an attorney of appellant's own choice is intrusted with the duty of securing process, and is lacking in diligence, the laches of the attorney in this regard are chargeable to the client. Goodman v. State, 4 Texas Crim. App., 349. The court committed no error in denying the continuance.

Bills of exception two and three are in such condition that they cannot be considered. Both complain of the testimony of the hotel clerk. Number two consists of three pages of numerous questions and answers; the other appears to be the entire direct and cross-examination of this witness, consisting of thirteen pages of questions and answers. For two reasons we must decline to consider the bills: First, because they are in question and answer form. We have repeatedly expressed disapproval of such bills, with our reasons therefor. See Carter v. State, 90 Texas Crim. Rep., 248, 234 S. W. Rep., 535; Jetty v. State, 90 Texas, Crim. Rep., 346, 235 S. W. Rep., 589; Rylee v. State, 90 Texas Crim. Rep., 482, 236 S. W. Rep., 744; McDaniel v. State, 90 Texas Crim. Rep., 636, 237 S. W. Rep., 292; Watson v. State, 90 Texas Crim. Rep., 576, 237 S. W. Rep., 298; Second, because many of the questions were proper and answers elicited thereby clearly admissible, and the bills are therefore too general. See rule announced and authorities collated under Section 211, Branch's Ann. P. C., page 135.

The only other question remaining for discussion is the sufficiency of the evidence. Virgil Grissom was the victim of the robbery. On the night of the occurrence he had been in the city of Wichita Falls with his wife. Upon returning home his wife got out of the car at the front door and Grissom drove his car to the garage at the rear of the house. After putting his car in the garage he started to the back of his residence when someone overtook him, having a pistol in his hand, and made a motion as if to hit him with it. Grissom put his hands up and about this time Mrs. Grissom, who had gone through the house, hearing some disturbance, stepped out from the back door when the party started to strike her with the pistol, whereupon Grissom told him not to strike his wife, and the party having the pistol told her to get in the house. The robber, holding the pistol in Grissom's side, went through his pockets, securing a five dollar bill, eleven one dollar bills, a half dollar and a penny. The half dollar had been filed on one side in some peculiar way enabling it to be

identified, and the penny was a foreign coin which Grissom had found a few days before the robbery. The man who committed the robbery, according to Grissom's testimony, was dressed in a dark suit with a handkerchief over his face, having on a dark colored cap. The pistol was silver plated, and appeared to be a forty-five. Grissom had known appellant four or five years. At the time of the robbery Grissom was under the impression that the robber was fifteen or twenty pounds lighter than appellant, but about the same height. He had seen appellant make motions to strike people and he testified that at the time the robber made the motion as if to strike him with the pistol he recognized it as the same motion he had seen appellant make at other times. Several days before the robbery Grissom had loaned appellant ten dollars at which time appellant told him he was going to Duncan, Oklahoma and Grissom thought he had gone. Grissom testified that he was in the habit of carrying large sums of money on his person, but he did not know whether appellant had seen him with the money at such times or not. After the robbery Grissom ran into his house, secured his pistol and thinking he heard a noise at the rear of the gallery, fired three times and then ran around in front of the house. Just at this time McQuigg came up in his car and stopped. Mrs. Grissom supports the testimony of her husband as to what occurred after their return home. When she went out of the back door and saw someone was holding her husband up she commenced to scream; the robber told her to shut up and get in the house. She had known appellant for about a year. She testified that the build and height of the robber was similar to that of appellant. She was acquainted with appellant's voice and while she would not testify positively that she recognized the voice as that of appellant, she says she thought it was his voice at the time he spoke to her. McQuigg testified that upon the night of the robbery just before he got to the Grissom home he noticed a five passenger red automobile standing near there and someone was sitting in the car at the wheel. About the time he was passing this car he heard the three shots which were fired by Grissom and saw someone run out of an alley into the street towards the red car. Within three or five minutes from the time McQuigg saw the red car he took Grissom in his own car and started back to town and the red car was then gone. Gerald Isler was the owner of a car answering the description of the one McQuigg saw near the Grissom home. Later on during the night Isler, appellant and a lady were found together in this red car. Isler had a room at the hotel. Appellant was not staying there. The hotel clerk testifies that on the night of the robbery Isler and appellant came into the hotel together about ten o'clock; that appellant had on a cap, but no coat; Isler was carrying on his arm a coat which corresponded with the trousers appellant was wearing; that Isler gave him a pistol, saying "if anything happened he had been in his room all night;" that in fact, Isler had not been in his

room before that night but had just come in; that Isler further said, "if he had pulled the deal he intended to he would have paid several months in advance." Isler paid $1.75 for a room for appellant, and then took the coat and appellant's cap upstairs, leaving appellant in the office bareheaded; when he came down he brought a white hat for appellant and he and Isler left the hotel together. The officers came to the hotel, and the clerk in company with them, found in the room which had been assigned to appellant the cap and coat which Isler had taken upstairs. In the pocket of the coat was found the half dollar and foreign coin which was identified by Grissom as the ones taken from him; he also identified the pistol given to the clerk by Isler as corresponding in size and appearance with the one used by the robber. Between eleven o'clock and midnight on the night of the robbery appellant, Isler and a man by the name of Hargrave and a young lady went to the lake at Wichita. Hargrave returned to town, the other three going in swimming. While appellant was undressing he told the boy who was running the bath house to take his money out and give it to Isler. He found some money just wadded up in his pocket. The boy did not count it and was unable to say what the amount was. Appellant counted the money and said there was five dollars short, and told the boy to get it out of his hat. The boy was unable to find any money in the hat and upon appellant's request handed the hat to him and he found a five dollar bill. This money was turned over to Isler. Mr. Fulton, the deputy sheriff, testified that when the city officers transferred appellant to the jail there was turned over to witness the half dollar and the foreign coin in question; they were lying on the table in his office and that appellant reached over to get them and witness told him he could not have them, as they were evidence. The other money was there at the same time but appellant only asked for the coins. We observe in the statement of facts a statement from one witness to the effect that some time in the morning after the robbery occurred a handkerchief was taken out of appellant's coat which was found in the room at the hotel. The witness states that he examined the handkerchief at the time and noticed the diagonal edges; that the handkerchief was in the same condition when it was taken from the coat as it was at the time of the trial. The handkerchief was introduced in evidence. We are unable to appraise the value of this testimony but it seems to have been regarded as somewhat significant. Isler and appellant were arrested at the same time. When Isler was searched there was taken from him eleven one dollar bills and a five dollar bill.

We are not willing to say the evidence is insufficient to support the verdict. On account of the facts being somewhat out of the ordinary we have given them in detail. The red car corresponding to Isler's near the scene of the robbery, the party running fom the place of the robbery towards the car, the appearance of Isler and appellant together at the hotel just about the time the robbery occurred, the

suspicious circumstances incident to their coming and going, the finding in appellant's coat of the identical coins, the transfer from appellant to Isler of the money at the bath house, and the subsequent finding upon Isler of the exact amount of currency in the same number and denomination as that taken from Grissom, from a combination of circumstances, which to our minds, justified the jury in reaching the conclusion they did, and would not authorize us to set aside the finding.

The judgment of the trial court is affirmed.

### ON REHEARING.

### June 23, 1922.

LATTIMORE, JUDGE.—Appellant urges that we were in error in upholding the action of the trial court in refusing to grant his application for a continuance. The matter has been again reviewed. The application appears so manifestly lacking in any showing of diligence that we are not impressed that our holding in this regard was error. Appellant states that he employed an attorney "a few days after he was arrested." This expression is so indefinite as to apprise us of nothing. It might have been any time anterior to the date of trial. The facts stated in said application have been examined by us and compared with testimony given by other witnesses upon the trial, in view of the insistence of appellant's counsel that under the peculiar facts in this case the rigid rules regarding a showing of sufficient diligence, should be relaxed. The absent witnesses were two women. By them appellant expected to show that he went out to Lake Wichita on the night in question about 8:30 and was with said women continuously thereafter in such manner as to make it impossible for him to have committed the robbery in question. A number of apparently reputable and disinterested witnesses testified to the presence of appellant and his codefendant in the town of Wichita Falls and in such positions as to make it plain that their testimony could not be true, if that stated as expected from said two women, was also true. These matters are for the consideration of the trial court in passing upon the question of a continuance when error in refusing same is urged in support of the motion for new trial. The trial court was amply justified in concluding that had said witnesses been present, their testimony would not have been as stated in said application, and in further concluding if necessary, that if they were present and gave such testimony upon another trial, it would not likely be true, or have the effect of bringing about a different result.

We are not able to bring ourselves to agree with appellant's contention that the evidence does not support the verdict. In our view

of the matter the State's contentions are amply supported. The fact that the alleged victim of the robbery was a gambler and admitted said fact, would not operate to prevent the jury's belief in the truth of his testimony. The identification of appellant and his companion seems in every way sufficient to justify the jury's belief that they were the guilty parties. The matter is fully discussed in our original opinion.

Being unable to agree with the contentions now urged by appellant, the motion for rehearing will be overruled.

*Overruled.*