

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| LUIS TORRES, | | No. 08-13-00027-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 120th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20120D02761) |
| | § | |

## DISSENTING OPINION

The majority affirms Appellant's conviction by relying on a rule that states any harm resulting from a trial court's affirmative misinstruction of the jury on a defensive issue in a criminal trial is vitiated if the State can prove the defensive charge should have never been given in the first place. First, I am not persuaded that there is a solid precedential or policy basis for invoking this rule, and because I am convinced that even under this rule the trial court correctly found non-trivial evidence that justifies the submission of the instruction, I respectfully dissent.

***The Trial Court Gave the Jury the Wrong Legal Framework to Decide Appellant's Guilt or Innocence***

I open with the caveat that my opinion should not be read as a judicial blessing of suspects violently resisting arrest, particularly in a case like this one that started as a simple

eviction and then escalated into a SWAT team standoff with a barricaded suspect. As a former prosecutor, I know many law enforcement officers. I am very cognizant of the risks they face every day, and I am grateful for the sacrifices they make in keeping our community one of the safest in the country. They are sworn to uphold the law--as am I. In this case, I believe that the law requires Appellant to receive a new trial because the jury was misinstructed. The issue here is not whether Appellant's self-admitted conduct was ultimately justified. That is a question for the jury. Rather, the broader issue at play is whether we as an appellate court can disregard the fact that the trial court gave the jury the wrong legal framework to use in measuring Appellant's guilt or innocence because we, as an appellate court, have decided after the fact and from a cold record not to defer to the trial court's mid-trial determination that a self-defense charge was warranted.

I ground my analysis on two foundational premises the majority does not dispute.

First, there is no doubt in my mind that the charge the trial court gave the jury was erroneous. The statute allows a suspect to resist arrest only when the officer uses more force than necessary to effectuate the arrest. TEX.PENAL CODE ANN. §§ 9.31(b)(2), (c)(West 2011). Case law makes clear that whether an officer had "lawful" authority to conduct the arrest is irrelevant to the analysis; a suspect has no right to resist even an unlawful arrest done without probable cause unless the officer uses more force than necessary to detain him. *See Garner v. State*, 858 S.W.2d 656, 661 (Tex.App.--Fort Worth 1993, pet ref'd)(noting that even if an arrest is made illegally, the arrestee may only resist if the conditions set out in Section 9.31(c) are met). The separation between lawfulness of an arrest and level of force used during an arrest is a distinction with a difference. Under the facts of this case, the police's possession of a writ of possession does not control whether Appellant can claim self-defense. Rather, the law states that

2

the police had a right to use reasonable force in arresting Appellant, and that Appellant had a limited statutory right to defend himself against any use of more force than necessary to effectuate his arrest. *Id.* The jury instructions given in this case never make those legal standards clear. Instead, they wrongly suggest to the jury that unconditionally any actions the police took that day were privileged because they acted under the "lawful" authority of a writ of possession. That is not the law. By framing the self-defense question imprecisely and incorrectly, the trial court allowed the jury to find Appellant guilty without ever presenting it with the operative question it needed to answer. That, alone, gives me pause.

Second, I firmly believe that while Appellant failed to object to the charge, he can demonstrate egregious harm stemming from the charge error that would otherwise require reversal. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex.Crim.App. 2005). The remainder of the charge never clarified the standard. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex.Crim.App. 2015)(listing remainder of jury charge as factor to consider in harm analysis). Argument of counsel never clarified the standard. *Id.* (closing arguments are a harm analysis factor). Indeed, as previously noted, whether the police acted under the color of a writ of possession was legally irrelevant, yet the State in its closing argument swayed between articulating the correct standard and making the writ of possession the centerpiece of its case. The chance that this legal misinstruction had a tangible effect on the jury's decision is real, since the timeline of events is complex and the jury's attention was never focused on the precise question relevant to guilt or innocence. *Id.* (state of the evidence is a harm analysis factor).

Were error and harm all there is to consider, I believe it is clear that reversal and remand for a new trial is warranted. But the State urges us to go another way based on an appellate court practice that I do not find to be prudent.

*Judicial Economy Should Not Allow Us to Ignore This Fully-Litigated, Assigned Error*

The majority accepts the State's major premise that we may dispense with a harm analysis in this case because when a defensive instruction should have never been given in the first place, error is automatically presumed to be harmless. I do not accept that premise. In support of this approach, the majority and the State rely on two cases I find to be problematic.

First, the majority and the State rely on *Hughes v. State*, 897 S.W.2d 285 (Tex.Crim.App. 1994) as establishing that erroneously-given instructions favorable to the defense are harmless as a matter of law. *Hughes* never sets out such a rule. In *Hughes*, a death-penalty defendant alleged, *inter alia*, that the trial court erred by granting an ostensibly favorable mitigation instruction that nevertheless violated the separation of powers clause. *Id*. at 301. In that case, the Court of Criminal Appeals did not hold that any harm from erroneously giving an instruction is *per se* vitiated merely because the instruction should not have been given. Rather, the Court still conducted a harm analysis and held that any constitutional procedural error in giving the charge was harmless beyond a reasonable doubt under those circumstances because the charge offered the jury an extra chance to say no on the mitigating special issues rendering the defendant death-eligible, and the jury chose to say yes instead. *Id*. In other words, the Court refused to allow the defendant to profit from a procedural error alone; a harm analysis was still required. *Hughes* is also factually distinguishable, since there was no allegation in *Hughes*, as there is in this case, that the language of the procedurally-unwarranted charge was also substantively improper. That distinction is critical, and it goes to the heart of the dispute presented here.

Second, the majority and the State cite *Burks v. State*, 49 S.W. 389 (Tex.Crim.App. 1899). In *Burks*, the defendant was convicted of shooting a man at a saloon at the close of the

nineteenth century. The trial court granted his request for a self-defense instruction, but indisputably set out the law of self-defense incorrectly. The Court of Criminal Appeals conceded that the charge was erroneous, but concluded that was not a valid basis for reversal because the defendant should not have received the charge in the first place. *Id*. at 171-72. Since being handed down in 1899, *Burks* has only been cited five times in Texas history, the last time being 1932.[1] None of these cases cite *Burks* for the proposition advanced by the State and the majority. *See Maclin*, 144 S.W. at 956 (citing *Burks* as authority on witness impeachment standards); *Jones*, 255 S.W. at 581 (same); *Bell*, 42 S.W.2d at 449-50 (same); *McDaniel*, 237 S.W. at 297 (op. on reh'g)(citing *Burks* as authority for threshold question of when a self-defense charge should be given in case where self-defense charge was *refused*); *Pettis*, 81 S.W. at 315, 317 (finding that trial court's denial of continuance to procure witness testimony related to self-defense was not error because self-defense was not present in this case, and noting in dicta that under self-defense law set out in *Burks*, judge likely should not have given self-defense instruction). In my research, I have not been able to find any other case that clearly articulates the rule that the State would have us believe that *Burks* set out in a single passing sentence 116 years ago. Given the paucity of citation to this case and the passage of time since its rendition, I am not confident that the rule as articulated in *Burks* stands up to scrutiny.

But even if *Burks* remains good law after nearly a century, I believe that the *per se* rule drawn from it is bad policy. We retain the broad constitutional power to correct errors in a criminal case. *See Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex.Crim.App. 2012)(citation omitted)("Once jurisdiction of an appellate court is invoked, exercise of its reviewing functions is limited only by its own discretion or a valid restrictive statute."); *accord Mitchell v. State*, 473

---

[1] *See Bell v. State*, 42 S.W.2d 448 (Tex.Crim.App. 1931); *Jones v. State*, 255 S.W. 419 (Tex.Crim.App. 1923); *McDaniel v. State*, 237 S.W. 292 (Tex.Crim.App. 1921); *Maclin v. State*, 144 S.W. 951 (Tex.Crim.App. 1912); *Pettis v. State*, 81 S.W. 312 (Tex.Crim.App. 1904).

S.W.3d 503, 508 n.9 (Tex.App.--El Paso 2015, no pet. h.). Yet this rule, which functions essentially as a procedural default rule, allows us to ignore an error that is otherwise egregiously harmful, properly within our purview, did not need to preserved, has been clearly assigned as error on appeal, and to which the State had an adequate appellate opportunity to respond. None of the other prudential rationales for not addressing the error apply. *Almanza v. State* shows that Appellant can raise this issue for the first time on appeal, so there is no preservation concern. *See* 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). We are not abandoning our neutral role and becoming public-advocate-at-large because Appellant brought the issue to our attention and the State had an adequate opportunity to respond. *See In re State*, 162 S.W.3d 672, (Tex.App.--El Paso 2005, orig. proceeding)(counseling judicial restraint in raising issues *sua sponte* in criminal proceedings). Our jurisdiction has been invoked and error presented. Why disregard this error without scrutiny?

In short, I do not find the legal authority to invoke this rule to be strong, and I see no compelling policy or prudential reason to invoke it here. If the State is correct and insertion of the self-defense issue into the jury's decisional calculus was wrong, then I fail to see how the situation was helped by giving the jury even more wrong law to use in reaching its decision. To me, this shows harm was amplified, not eliminated. There may be two errors at play here, but applying a rule that ignores an error against Appellant (getting the law wrong) in favor of an error against the State (giving the self-defense instruction in the first place) is ill-advised. The State may have been inconvenienced by having to address self-defense, but ultimately, the State suffered no harm because it still had to prove its case, affirmative defense or not. Appellant, by contrast, faced a jury that, under the State's theory, was materially misinstructed as to his only defensive theory at least twice. Ignoring compound errors like this does not breed procedural

6

confidence in the outcome of verdicts. The charge should focus the jury's attention on issues, not direct them to travel down legal sidestreets. For this reason, I cannot join the majority in applying this rule, and, to the extent the *Burks* rule remains good law, I believe it should be overturned.

### *Appellant Was Entitled to a Self-Defense Instruction that Correctly Set Out the Law*

Having addressed my concerns with the rule, I now turn to the majority's minor premise. Even accepting the rule as articulated by the majority, I believe that the trial court correctly concluded that Appellant was entitled to the self-defense instruction under the very lenient standard afforded to defendants who wish to submit affirmative defenses to a jury. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001)("A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense.")

First, the majority correctly states that in order to claim self-defense, the defendant must essentially admit to his crime--he must "confess and avoid." The majority does not believe Appellant has admitted to assaulting Officer Almada on this record. I believe he has. Whether a defendant pleading self-defense must admit to each and every element of the crime, or merely the operative *actus reus*, is an open question in Texas jurisprudence that has been inconsistently answered over the past six decades. *Compare Ex parte Nailor*, 149 S.W.3d 125, 133 (Tex.Crim.App.2004)(denial of intent to harm was negation of crime's elements, not admission to those elements and arguing actions were justified; as such, self-defense instruction not warranted) *with Martinez v. State*, 775 S.W.2d 645, 647 (Tex.Crim.App. 1989)(murder defendant who admitted to shooting a gun but denied intent to kill could raise self-defense

7

claim);  *see also Cornet v. State*, 359 S.W.3d 217, 225 & n. 43 (Tex.Crim.App. 2012)(refusing to overrule *Martinez* and suggesting in dicta that *Nailor*'s application of the confession-and-avoidance doctrine only definitively applies to factually-similar misdemeanor assaults); *Juarez v. State*, 308 S.W.3d 398, 404 (Tex.Crim.App. 2010)(holding that the confession-and-avoidance doctrine does not categorically apply to all affirmative defenses).  The majority takes the position that the confess-and-avoid doctrine *does* require Appellant to admit to a particular mental state, and that since he denied any intent to threaten the police officers by reaching for the gun, he is precluded from asserting self-defense here.

But even if confess-and-avoid is so stringent as to require a defendant's admission to every element of an offense including *mens rea*, this Court has repeatedly made clear that aggravated assault by threat is not a crime in which the defendant's subjective state of mind matters when he engages in certain conduct.  Rather, aggravated assault by threat[2] is a conduct-oriented crime where the propriety of a conviction depends solely on whether the defendant intentionally or knowingly engaged in conduct that was objectively threatening under the circumstances. *Montejano v. State*, No. 08-12-00235-CR, 2014 WL 4638911, at *6 (Tex.App.--El Paso Sept. 17, 2014, no pet.)(not designated for publication); *Airheart v. State*, No. 08-11-00037-CR, 2012 WL 1431762, at *12 (Tex.App.--El Paso Apr. 25, 2015, pet. ref'd)(not designated for publication).  "The mere presence of a deadly weapon, under proper circumstances, can be enough to instill fear and to threaten a person with bodily injury[,]" *Williams v. State*, No. 01-03-00443-CR, 2004 WL 1065360, at *2 (Tex.App.--Houston [1st Dist.]

---

[2] The indictment reads, in relevant part:

The Grand Jurors . . . present that on or about the 21st day of May, 2012 and anterior to the presentment of this indictment . . .  LUIS TORRES . . . did then and there intentionally or knowingly threaten FRANCISCO ALMADA with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a pistol, during commission of said assault . . . .

May 13, 2004, pet. ref'd)(not designated for publication), and convictions for aggravated assault by threat have been upheld where a defendant merely brandishes or handles a weapon. *See*, *e.g.*, *Carvajal v. State*, 529 S.W.2d 517 (Tex.Crim.App. 1975)(aggravated assault by threat conviction upheld where defendant pulled a loaded gun on police officers but gun was not cocked and thus could not be fired); *Montgomery v. State*, 99 S.W.3d 257 (Tex.App.--Fort Worth 2003, no pet.)(evidence sufficient for aggravated assault by threat conviction where defendant threatened to pistol-whip wife, but wife could not remember if defendant was holding gun or if gun was in his waistband when threat was made). Thus, even under the most stringent confess-and-avoid approach, by testifying that he reached for a gun during an armed confrontation with officers-- even if he denied he had any intent to threaten the officers--, Appellant admitted to knowingly or intentionally engaging in conduct that a reasonable person would perceive as objectively threatening, which could subject him to conviction for aggravated assault by threat. In other words, wittingly or not, Appellant admitted to committing the crime as charged. *See Urquiza v. State*, No. 08-08-00016-CR, 2010 WL 1230664, at *2 (Tex.App.--El Paso Mar. 31, 2010, no pet.)(not designated for publication)(aggravated assault by threat is consummated when "the accused intentionally or knowingly engaged in the prohibited conduct"). As such, the confess-and-avoid doctrine stands as no bar to granting the instruction here.

Second, the majority holds that Appellant cannot establish that police used more force than necessary to attempt arrest as a matter of law. I recognize that we review this threshold legal question of entitlement to a charge *de novo*. That being said, I hesitate to second-guess the trial court here when the standard for obtaining the instruction is so low and when in many other arenas we heavily defer to the trial court's sense of how evidence has played out in the courtroom.

In support of its position that the jury charge was unwarranted, the majority limits the scope of its consideration to the events immediately leading up to the police's first arrest attempt and breaks the series of events into discrete actions like the permissible use of a Taser before entering the apartment. I agree that if this is the proper scope by which we judge police conduct vis-à-vis a defendant's self-defense claim, then Appellant could not raise a fact issue on reasonable force. However, I do not believe the trial court need be so limited in scope before deciding entitlement to a charge. The State correctly raises the point that a defendant may not receive a resisting arrest self-defense instruction if he resisted before the officer attempted to use force. That is the crux of our inquiry. The majority believes the record conclusively establishes that Appellant initiated the use of first force. To me, the record is murkier as to the exact timeline of events, which renders this a jury question, not an appellate one. The State also says, and I agree, that a suspect does not have the legal right to assume that an officer threatening deadly force by pointing a gun at him will actually shoot and thereby justifiably point a gun back at police. But again, the record is ambiguous as to what actually happened in the lead-up to the arrest attempt, and determining whether the gun was cocked, whether Appellant actually pointed the gun at police, whether he merely reached for it, or whether he resisted in some other way are all questions that involves resolution of credibility and demeanor--questions the jury should answer.

I do not wish to foreclose a defendant's right to prepare a defense, and neither did the trial court. There is sufficient evidence, however weak it may be perceived to be, supporting submission of the charge. It is for the jury to decide if Appellant's claim for self-defense is reasonable or unreasonable. That decision must be guided by correct statements of law. I am

10

confident that given the correct standard, the jury can be trusted to decide Appellant's fate in a way that comports with Appellant's right to be tried by the law actually applicable to his case.

## CONCLUSION

"We are the guardians of the process." *Ex parte Graves*, 70 S.W.3d 103, 119 (Tex.Crim.App. 2002)(Price, J., dissenting). The process has broken down. By the State's own argument, the jury considered matters it should not have in reaching its verdict. Yet by resurrecting the issue of whether the self-defense charge should have been given in the first place, the State in this case has not only received review and obtained favorable relief on an unappealable point of error, but the Court has declined to address the meritorious point that Appellant did properly raise on appeal. *Burks* suggests this approach may be permissible. I think it to be unwise. *Pfeiffer* reminds us that we still have the overriding power to correct this error that has been brought to our attention. I believe that we should do so.

For this reason, I respectfully dissent.


September 28, 2016

YVONNE T. RODRIGUEZ, Justice


11